HALE COUNTY STATE BANK v. BRAY et al.

No. 4632.

Court of Civil Appeals of Texas. Amarillo.

Sept. 21, 1936.

Rehearing Denied Oct. 26, 1936.

Griffin & Morehead, of Plainview, for appellant.

Lockhart & Brown, of Lubbock, for appellees.

JACKSON, Justice.

At a regular term of the Ninety-Ninth district court of Lubbock county, in cause No. 6077, W. H. Bray on November. 26, 1934, recovered a judgment against A. L. Stovall for the sum of $1,551.25. In addition, the judgment foreclosed for W. H. Bray his equitable lien against five promissory vendor's lien notes, aggregating the sum of $2,480, each dated May 1, 1934, and payable to A. L. Stovall one, two three, four, and five years, respectively, after date. The equitable lien of W. H. Bray was foreclosed subject to what the court decreed a lien on the notes held by the Hale County State Bank to secure it in the payment of $208 due the bank by A. L. Stovall. The judgment decreed that an order of sale issue to the proper officer directing him to sell the notes, and if the proceeds of such sale were not sufficient to satisfy the judgment "to make the balance thereof as under execution."

The bank was not a party to this suit.

On December 1, 1934, W. H. Bray made application in said district court of Lubbock county for a writ of garnishment to be issued against the Hale County State Bank, alleging that he had recovered judgment against A. L. Stovall for the- sum of $1,551.25, that said judgment was still in full force, due and unsatisfied; that the defendant Stovall did not have, within the knowledge of plaintiff, property in his possession within the state, subject to execution, sufficient to satisfy the judgment; that plaintiff had reason to believe, and did believe that the Hale County State Bank, a private corporation, was indebted to defendant, or had in its hands effects belonging to said defendant, and prayed for a writ of garnishment and for further proceedings as required by law.

The suit was properly filed, docketed, and numbered 6077A. A writ of garnishment was issued in statutory form and served on the bank on December 1, 1934, requiring it to answer on January 14, 1935.

The bank negligently failed to answer, and on January 17, 1935, default judgment was rendered against it as garnishee for the sum of $1,551.25.

On July 18, 1935, the clerk of the district court of Lubbock county issued to said county, on the judgment in the garnishment suit, an execution which was returned nulla bona. On the same day an alias execution was issued to Hale county on said judgment, and placed in the hands of the proper officer, directing him to make out of the goods, chattels, lands, and tenements of the bank the sum of $1,551.25, with interest and costs of the garnishment suit.

After the issuance of the alias execution to Hale county, the bank, on July 30, 1935, filed in said Ninety-Ninth district court a petition seeking to enjoin the enforcement of the default judgment against it, pleaded a meritorious defense, and asked that said judgment be vacated and set aside, alleging that it was void.

After a final hearing on the petition to enjoin, vacate, and set aside the judgment, the bank was denied relief, and this action of the trial court is before us for review.

The appellant bank contends that the default judgment against it as garnishee was and is void, since the judgment in the main case, cause No. 6077, the only basis for the default judgment, foreclosed a lien on certain notes fully described, directed their sale to satisfy the judgment in the main case, and ordered if the proceeds of such sale were not sufficient to satisfy said judgment "to make the balance thereof as under execution"; that since no order of sale was ever issued and no sale had, by virtue of the lien so foreclosed, the court was without authority to estimate in advance of such sale the amount of the deficiency, if any, in cause No. 6077 that would remain unpaid after such sale, and therefore the default judgment against it as garnishee was rendered without jurisdiction and was void.

Neither the affidavit, the application for, nor the writ of garnishment discloses that any order of sale was ever issued on the

main judgment. It is conceded that the record shows that no order of sale was ever issued thereon.

The record nowhere shows the value of the notes.

The judgment in the main case, No. 6077, was entered in compliance with article 2218, R.S.1925, as amended by Acts 1933, c. 92 (Vernon's Ann.Civ.St. art. 2218), which is as follows: "Judgments for the foreclosure of mortgages and other liens shall be that the plaintiff recover his debt, damages and costs, with a foreclosure of the plaintiff's lien on the property subject thereto, and, except in judgments against executors, administrators and guardians, that an order of sale shall issue to the sheriff or any constable of the county where such property may be, directing him to seize and sell the same as under execution, in satisfaction of the judgment; and, if the property cannot be found, or if the proceeds of such sale be insufficient to satisfy the judgment, then to make the money, or any balance thereof remaining unpaid, out of any other property of the defendant, as in case of ordinary executions."

In giving the requisites of an execution, article 3783, R.C.S., among other things, provides:

"2. If the judgment be for money simply, it shall require the officer to satisfy the judgment out of the property of the debtor, subject to execution.

"3. If the judgment commands the sale of particular property for the satisfaction thereof, the writ shall be framed accordingly."

Article 3831, R.C.S., provides: "The clerk of each court shall keep an execution docket in which he shall enter a statement of all executions as they are issued by him, specifying the names of the parties, the amount of the judgment, the amount due thereon, * * * the date of issuing the execution, to whom delivered, and the return of the officer thereon, with the date of such return. Such docket entries shall be taken and deemed to be a record."

Article 5450, R.C.S., provides in effect that the satisfaction of any judgment, in whole or in part, may be shown by the return upon any execution issued upon said judgment.

In Studebaker Harness Co. v. Gerlach Merc. Co., 192 S.W. 545, 548, Judge Boyce, speaking for this court, says:

"While the garnishment suit is docketed separately, it is ancillary to and a part of the principal suit, and the court will take judicial knowledge of the proceedings in the main suit. Kelly v. Gibbs [84 Tex. 143] 19 S.W. 380, 563; Kreisle v. Campbell, 89 Tex. 104, 33 S.W. 852. So in this case, we think the proceedings in the main suit, and in the garnishment suit, should be considered together."

"A court will take judicial notice of proceedings in an ancillary suit. So the court in an action in which property is attached must take judicial notice of the attachment proceedings, and in a garnishment suit the court has judicial knowledge of the proceedings, orders and judgments in the main suit." 17 Tex.Jur. 206, par. 29.

It appears from the above authorities that the court was charged with judicial knowledge of the facts that no order of sale had been issued in the main suit, that the notes on which the lien was foreclosed therein had not been sold thereunder, and that the amount of the deficiency, if any, had not been ascertained. He was also charged with knowledge of the law which denies his authority to enter a judgment for such a deficiency, if one exists, until the amount thereof is determined. However this may be, as we understand the holding in Bailey v. Block, 104 Tex. 101, 134 S.W. 323, 324, the default judgment in the garnishment case was void and subject to collateral attack because no order of sale had been issued in the main case, the notes sold and the amount of the deficiency, if any, determined.

The Supreme Court, in Bailey v. Block, supra, says:

"This is an action of trespass to try title for land in the city of Houston, the decision of which depends on the validity of a sheriff's sale thereof made in 1886 to A. P. Lufkin, under a judgment in his favor against Mrs. Louise Bremond, independent executrix of the will of Paul Bremond, deceased, to whose estate the land belonged. The plaintiffs in error, plaintiffs below, claim under deeds from Mrs. Bremond, who was also the devisee under the will, and the defendants claim under the prior sheriff's sale. The judgment under which the sale was made established the debt against Bremond's estate, and also foreclosed a mortgage given to secure it on two pieces of land other than that in controversy, in the terms

of article 1340, Rev.St.1895. The order of sale, which was in conformity with the judgment, was received by the sheriff November 5, 1886, and he advertised the mortgaged property for sale on the next sale day, and at the same time indorsed on the writ a levy on the property in controversy, and advertised it also for sale as under execution on the next sale day. When that day arrived, he first sold one piece of the mortgaged property and offered the other, but received no bid, and then sold the land in controversy to make up a balance of the judgment left unpaid.

"It is found by the trial court that the sheriff, before levying on the land in controversy, ascertained that the mortgaged property would be insufficient to satisfy the judgment, and for that reason made the levy on other land.

"The question, of course, is whether or not the sale of the land in controversy was void, and the decision of it depends on the effect of several statutory provisions. * * *

"Much light is thrown upon the meaning and purpose of article 1340 by the history of the development of the law regulating the collection of balances, called 'deficiencies,' due on mortgage debts after exhaustion of the property given to secure them. Originally, the mortgagee could only enforce his mortgage against the property. Later it was established that, if he had a bond or obligation for the debt collateral to the mortgage, he might, after application of the proceeds of the mortgaged property, maintain an action at law thereon for any balance unpaid. Afterwards, by statute, rule of court, or otherwise, it became the practice in some jurisdictions for the creditor, after the foreclosure and sale of the property and the return thereof showing the result, to apply to the court which decreed the foreclosure for a deficiency judgment, and, in other jurisdictions, for the judgment of foreclosure to provide for a report of the sale, the application of the proceeds, and the issuance of execution for any balance ascertained in that way. The last was the procedure in this state (Paschal's Dig. art. 1480) prior to the revision of 1879, when the further advance shown in article 1340 was made. To all of these practices one prominent requirement is common, and that is that the foreclosure sale is to be made, the proceeds applied, and the deficiency thus mathematically ascertained before any proceeding

against the property of the debtor, other than that mortgaged, is allowed. This is true whether the fact is to be ascertained by the court as the basis of a deficiency judgment, or by the clerk or referee as the basis of a deficiency execution authorized by the decree of foreclosure. Jones on Mortgages (6th Ed.) §§ 1709a et seq., 1920; Freer v. Tupper, 21 S.C. [75] 81; McCall v. Rogers, 77 Ala. 349; Freeman on Executions, § 10; 27 Cyc. 1746, 1751, 1752, 1754, 1756, 1760, 1761.

"Neither the court nor the clerk is allowed by such statutes to estimate in advance the proceeds that will probably result from a sale, and award judgment or execution for a probable balance. * * *

"The judgment provided for in article 1340 is contingent as to the deficiency to be enforced against the general estate of the debtor until it is made certain in the way prescribed, viz., by sale of the mortgaged property and application of the proceeds, and this is true also of the writ. Freeman on Executions, § 10. The officer has neither judgment nor writ to empower him to proceed against other property than that mortgaged until the prescribed contingency has happened, viz., the sale and the application of the proceeds rendering certain the amount to be collected as under execution. The writ issued on such a judgment by force of article 1340 may operate as both an order of sale and an ordinary execution, but not necessarily so, since the latter office may be prevented from ever coming into effect by the satisfaction of the judgment from the sale or otherwise; and where it does so operate, its two functions are active successively, and not concurrently. * * *

"It is only where an order of sale becomes an ordinary execution after sale of the mortgaged property, leaving a balance, that the further procedure as under ordinary execution is to be followed. * * *

"And this conclusion necessarily answers the contention that the officer's departure from the prescribed course amounted only to an irregularity which did not render the sale void, but only subjected it to direct attack. * * *

"We hold that the sale was void, and that, upon the facts found, the plaintiffs were entitled to recover, but as an adjustment of equities may be proper, we will remand the cause in accordance with the established practice."

In our opinion this case is decisive of appellant's contention that the garnishment judgment was void. See, also, Teague v. Fairchild (Tex.Com.App.) 15 S.W.(2d) 585.

The cases relied upon by appellee deal with judgments "for money simply," under subdivision 2 of article 3783, R.C.S., and, in our opinion, have no application to the judgments provided in subdivision 3 of said article 3783.

The judgment is reversed and the cause remanded.