## GRAY CO., Inc., v. WARD.

### No. 2326.

Court of Civil Appeals of Texas. Waco.

Dec. 12, 1940.

Rehearing Denied Dec. 19, 1940.

Scott & Wilson, of Waco, for appellant.

Conway & Scharff, of Waco, for appellee.

TIREY, Justice.

■ This is an appeal from three judgments in garnishment in favor of Joe L. Ward, appellee. These judgments are, respectively, Joe L. Ward against East Texas Auto Supply Company, Beard & Stone Electric Company, Inc., and Archenhold Automobile Supply Company as garnishees, and by order of this court these three causes were consolidated under the above number, because the sole question involved is the validity of the judgment on which the writs of garnishment are predicated. The judgment in the main cause is in favor of Joe L. Ward against Gray Company, Inc., a corporation, organized under the laws of the state of South Dakota, with its office and principal place of business located at Minneapolis, Minnesota. Plaintiff alleged that Jim Sampson of Tarrant County was the agent of said defendant corporation and service was had upon him. Hon. Frank M. Wilson of the Waco Bar, in the capacity of amicus curiae, averred that the court did not have jurisdiction of the defendant for substantially the following reasons: That the defendant was a foreign corporation engaged wholly in interstate commerce and was not doing business in Texas; that Jim Sampson was not an agent of defendant; that it did not have a permit to do business in Texas; and that it had neither employees nor property in Texas. The court heard evidence on the matters raised by amicus curiae, and, upon a motion of plaintiff to correct sheriff's return, entered an order overruling the contentions raised by amicus curiae and granted plaintiff's motion to amend the return and found that the Gray Company, Inc., the defendant, was subject to the jurisdiction of the court and that Sampson was such agent of the defendant upon whom service of citation could be had. Gray Company, Inc., entered no appearance in the main case, whereupon judgment was entered by default in favor of Joe L. Ward against defendant for the amount sued for (after hearing evidence on plaintiff's claim). Thereafter, Joe L. Ward instituted garnishment proceedings against the above named garnishees. Each garnishee answered and Gray Company, Inc., filed its plea of intervention in each of said garnishment proceedings, and in each plea raised the question that the judgment in the main cause was void for want of jurisdiction of the trial court to enter the same, because (a) defendant, a foreign corporation, was not doing business in Texas; and (b) Sampson was not an agent (or proper agent) for service of process and that the service upon him was insufficient to confer jurisdiction. It has long been the rule in Texas that the defendant in the main suit has the right to appear in a garnishment suit and make his own defense. See Kelly v. Gibbs, 84 Tex. 143, 19 S.W. 380, 563; Hale County State Bank v. Bray, Tex.Civ.App., 97 S.W.2d 337, point page 339; 17 Tex.Jur. 206, par. 29; Missouri Pacific Ry. Co. v. Whipker, 77 Tex. 14, 13 S.W. 639, point page 640, 8 L. R.A. 321, 19 Am.St.Rep. 734; Revised Statutes of 1925, Art. 4094; Continental Supply Co. v. Carter, Tex.Civ.App., 13 S.W.2d 927.

Trial of the garnishment cases was without the intervention of a jury. The court found in favor of plaintiff, Joe L. Ward, against the respective garnishees and in each judgment made the finding that the judgment in the main case was valid and unsatisfied. The intervener has appealed and has assailed the judgment of the trial court on the grounds raised by it in its pleas of intervention, as hereinbefore stated.

The first question presented is: Was Gray Company, Inc., doing business in Texas? Joe L. Ward, plaintiff, testified,

in substance, as follows: That he had been in the wholesale automotive accessory and equipment business in Waco, Texas, for approximately 22 years; that he had known Jim Sampson 15 years as a salesman representing the Gray Company, Inc., of Minneapolis, Minnesota, defendant in the main .suit; that since 1930 down to the present time, said company had been maintaining service of the equipment it sold in Texas; that Jim Sampson carried with him equipment, replacement parts and tools for the purpose of servicing defective equipment sold by said company and that Jim Sampson did actually service defective equipment formerly owned by said company, and sold by it to jobbers and wholesalers and their trade; that he (Ward) would take the matter of servicing the defective equipment up with the Gray Company, Inc., and that it would send Sampson to service it; that Sampson made adjustments on accounts for merchandise sold; that Gray Company, Inc., had on two different occasions maintained exhibits in the state of Texas, one of which was at Houston (at a county fair) during the first part of the year 1939, at which time an executive officer of the company was present, and that it had a great amount of its merchandise and equipment on exhibit (covering its entire line), and that said company was soliciting business and taking orders in conjunction with the jobbers handling its merchandise, which merchandise was sold to service stations, car dealers and garagemen. It was at this exhibit that Ward made his agreement with an executive officer of the company and Jim Sampson to discontinue the sale of the line of products of Gray Company, Inc., and return such of its equipment as he had on hand, and out of this agreement the controversy in the main suit arose.

On October 3, 1935, L. L. Gray, general manager of Gray Company, Inc., wrote plaintiff as follows:

"Your letter of September 3rd, addressed to our accounting department, with reference to invoices covering replacement units for certain pieces of our equipment which did not work out so well, has been referred to my attention.

"Of course, it is true, we experienced some troubles with a few of the earlier pieces of our new type of equipment. To be frank about it, some of the troubles were our own manufacturing problems. These troubles, whatever they may have been, were exaggerated to some extent due to the fact that the equipment was new to our own selling organization and they lacked knowledge of, and, if you please, confidence in the units themselves because of this lack of knowledge.

"Mr. Jim Sampson spent about ten days here in Minneapolis about three weeks ago, at which time he was thoroughly schooled in these units. Jim quite frankly stated that much of the trouble he experienced could have been overcome had he been as familiar with the units earlier as he was when he left our factory here.

"Again, honestly these troubles were trivial and I write to you now to assure you that our units as we have manufactured them for the last four or five months are all you could desire or wish for in a unit of this kind. Jim Sampson will bear me out in what I claim and I urge that you do not hesitate to place the efforts of your selling organization squarely behind these automatic units of ours, including particularly the new cheaper series units we are about to announce, and which Jim has knowledge of, at any time. In fact, Jim has sold a lot of these small units and is all 'hopped' up over the possibilities of same. Discuss this question with Jim upon the occasion of your next visit, and take my assurances given · in this letter for whatever they are worth as to the merit of these new units of ours."

Jim Sampson, who was served with citation, testified substantially that he called on some four jobbers in the state of Texas and solicited and took orders for Gray Company, Inc.; that if said orders were accepted by said company it would ship the merchandise direct to the wholesaler and that when the merchandise so ordered and shipped was paid for, that he would then receive a commission from Gray Company, Inc.; that he made recommendations for adjustments and replacement of parts on the merchandise so sold when there was trouble with reference to said equipment, and that he did this service work on his own volition in order that this equipment might "stick"; that "if I can't make it 'stick', it is returned and I do not get any commission"; "there is other parties out of the factory that make periodical calls throughout the territory and call without my presence"; that when he called on a customer he would check his stock records with reference to the equipment the company had on hand manufactured by Gray Company, Inc., and he would suggest

to the customer that he give an order for such equipment that he was short on; that he would write the order and the order would then be transmitted by mail to Gray Company, Inc.; that during the past year he had also called on jobbers for two other foreign corporations located in the state of Ohio, namely, Joyce Gibland Company and Modern Equipment Corporation, and that prior to that time he had accepted orders for numerous manufacturers. These orders were solicited and transmitted by Sampson in the same manner as were the orders taken for Gray Company, Inc., and he received a commission on the sale of such products; that Gray Company, Inc., handles commercial lubricating equipment, Joyce Gibland Company handles jacks and hydraulic lifts, and Modern Equipment Company manufactures air compressors and equipment, and all of these products are used in connection with the automobile industry; that in calling upon the jobbers, he solicited the good will of each of the companies for whom he was soliciting business and was doing what he termed "missionary work" and that it was necessary for him to do such work in order to build up good will for the different products that he was selling; that he would go alone or with the wholesaler or his representative and call on the local trade for the purpose of soliciting their good will and aiding the wholesaler in the sale of the merchandise sold by him; that he called on four jobbers in the state of Texas, but made dozens of calls doing "missionary work" with major oil companies or motor car executives; that Gray Company, Inc., did not have a warehouse or any stores in Texas; that it did not maintain any office in Texas and that he handled his business from his residence and his hotel; that if he wanted any extra help, he employed them and paid for same out of his own commissions; that he was in Waco on the day he was served; that he mailed the citation to the home office of Gray Company, Inc.; that he made inquiry as to the names of reputable law firms in Waco and forwarded such information to the company; that he did this of his own volition and not upon the request of Gray Company, Inc.; that he did not employ (and did not know who employed) the amicus curiae and he was not paying him; that Gray Company, Inc., sold lots of equipment in Texas and that during the year of 1938 it sold approximately $75,000 worth. Sampson's territory included Texas and Okla-

homa and parts of Arkansas and Louisiana.

 Gray Company, Inc., conducted its affairs in Texas in the manner as hereinbefore stated. The general rule is: "A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there. And even if it is doing business within the state, the process will be valid only if served upon some authorized agent." Philadelphia & Reading Railway Company v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann. Cas.1918C, 537. Sampson devoted a part of his time to what he termed "missionary work", with the idea of increasing the good will of the company whose products he was selling; and he also serviced the equipment and made such adjustments and repairs of the same as was necessary to make the machinery do and perform the work that it was built to do; and at the request of Gray Company, Inc., he made such inspections and recommendations to the company and to the users of said equipment as his judgment dictated. For example, in May 1936, intervener company wrote plaintiff, in part, as follows: "We regret very much hearing that this particular unit has been causing so much trouble and we hope that the parts we are supplying will solve the problem for you. Furthermore, we are asking our representative, Mr. J. B. Sampson, to inspect the unit at his earliest convenience, with the hope that he can offer some suggestions which will help insure the Waco Chevrolet Company more satisfactory service." We think the evidence discloses that Gray Company, Inc., had been conducting a continuous course of business in the solicitation of orders for the machinery and equipment that it was manufacturing and selling to the wholesalers in Texas (as contra-distinguished from sporadic sales), and that under the plan of their sales organization it was carrying on an established course of business in Texas, doing acts local in nature that made it amenable to the jurisdiction of the courts of Texas, and that the evidence is ample to support the judgment of the trial court that the intervener was doing business in Texas. International Harvester Company of America v. Commonwealth of Kentucky, 234 U.

S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Browning v. City of Waycross, 233 U.S. 16, 34 S.Ct. 578, 58 S.Ct. 828; Cone v. New Britain Machinery Co., 6 Cir., 20 F.2d 593, writ of certiorari denied, 275 U.S. 552, 48 S.Ct. 115, 72 L.Ed. 421. The intervener company, by its efforts as above outlined, had established a substantial business in Texas, it having during the year of 1938 sold $75,000 worth of equipment that had been shipped to Texas. It is true that there is "no precise test of the nature or extent of the business that must be done. All that is requisite is that enough be done to enable us to say that the corporation is here." Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915, 918; St. Louis Southwestern Ry. Co. of Texas v. Alexander, 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486, Ann.Cas.1915B, 77.

Was Sampson a proper agent for service? We think so. He had been soliciting orders for Gray Company, Inc., for 15 years and the wholesalers upon whom he called covered the entire state. The complaints that the wholesalers referred to the company were in turn referred by said company to Sampson. Sampson serviced the equipment, made inspections, adjustments and repairs and recommendations as to the replacement of parts to the intervener company. In fact, Sampson had been schooled by intervener company for the purpose of familiarizing himself with said equipment so that he might better understand its mechanism and operations in order that he might be better able to eliminate and overcome the complaints and troubles given by the equipment manufactured and sold by defendant in Texas; and plaintiff was expressly directed to discuss the questions of defendant's equipment with Jim Sampson. Moreover, on March 3, 1936, said Sampson wired defendant company "collect" as follows: "Having trouble with CJ Piston sticking in nozzle both sizes all Ward Floyd have sold have come back suggest you express six each new nozzles complete old ones will be returned this is first trouble I have run into stop I will be Roosevelt Hotel Waco until tomorrow."

On March 5, 1936, defendant company wrote plaintiff, in part, as follows:

"Please be advised that we sent out to you today, on receipt of a wire from Mr. J. B. Sampson, three new CJ–421 sts of guns and we are requesting that you return to us immediately, marked to the attention of the writer. * * *

"The unit being a new item in our line we naturally were very much concerned upon receipt of Jim's wire and will appreciate all you can do to expedite the return to us here in Minneapolis. Needless to say, the replacing sets have been tested in every conceivable manner so that I can assure you without fear of contradiction that the units will operate perfectly when placed in service."

Moreover, on March 26, 1936, intervener company wrote Jim Sampson, in reply to his letter of March 23rd regarding equipment previously sold to plaintiff, in part, as follows: "Regarding the P-75 Alemite gun, I have discussed this with Harry, and he states that as long as it has been agreed to by you as our representative, he will take it back, but we presume that Ward Floyd will prepay it in to Minneapolis. You asked us to issue a credit, but it is not customary to do so until the merchandise gets in. Please advise us on this score by return mail."

In August 1937 Gray Company, Inc., wrote plaintiff, in part, as follows: "This will acknowledge your wire of this morning with reference to the difficulty you are experiencing with Graco Pumping units. First of all, we wish to advise that immediately upon receipt of your wire we telegraphed our Mr. Jim Sampson asking that he get in to Waco promptly and assist you in this matter. Rest assured, Mr. Behringer, we are just as anxious as you are to get this matter cleaned up and we will await full details from Jim Sampson as to what is necessary to relieve this condition."

It appears to us that the testimony in this case discloses that Sampson was a proper agent for service in this cause. Justice Cardozo, in the case of Tauza v. Susquehanna Coal Co., supra, said: "if the persons named are true agents, and if their positions are such as to lead to a just presumption that notice to them will be notice to the principal, the corporation must submit." It will be recalled that when Sampson was served with citation he immediately mailed said citation to the home office and did so voluntarily, and thereafter voluntarily submitted a list of names of reputable attorneys in Waco to the home office. Vilter Mfg. Co. v. Rolaff, 8 Cir., 110 F.2d 491. The fact

that Sampson received his compensation in the form of commissions would not change his status as a traveling salesman, Hamberger v. Marcus 157 Pa. 133, 27 A. 681, 37 Am.St.Rep. 719; In re Dexter, 1 Cir., 158 F. 788; nor would the fact that Sampson represented other manufacturers and received his compensation for such service solely on a commission basis change his status as a traveling salesman. In re National Marble & Granite Co., D.C., 206 F. 185; In re Roebuck Weather Strip & Wire Screen Co., D.C., 180 F. 497. We are therefore of the opinion that under Article 2031 of our Revised Civil Statutes of 1925 that Jim Sampson was such traveling agent or traveling salesman of such intervener corporation within the contemplation of said statute.

The judgment of the trial court in each of the garnishment cases is in all things affirmed.