Thomas E. CROTHERS et al., Appellants,

v.

MIDLAND PRODUCTS CO., Appellee.

No. 14897.

Court of Civil Appeals of Texas.

Houston.

Jan. 12, 1967.

H. Coke Wilson, Houston, for appellants, Hayden, Pravel, Wilson & Matthews, Donald R. Bernard and Larry G. Myers, Hous-

Robert A. Hall, Houston, for appellee, Baker, Botts, Shepherd & Coates, Houston, of counsel.

WERLEIN, Justice.

This suit was brought by Thomas E. Crothers and Tel-Go Manufacturing Corporation, Inc., residents of Harris County, Texas, to enforce a sales contract entered into by Tel-Go and Midland Products Company on February 12, 1965, and to recover damages for breach of such contract. Midland Products Company, a corporation, domiciled in the State of New Jersey, made a special appearance under Rule 120a of the Texas Rules of Civil Procedure, alleging in its sworn motion that it appeared specially for the limited purpose of objecting to the jurisdiction of the court pursuant to said rule and to move the court to quash, set aside and hold for nought the issuance and attempted service of process in the case upon and through the Secretary of State of Texas, and to dismiss the cause for lack of jurisdiction of the court over the person of the defendant.

In its special appearance appellee alleges that it was incorporated under the laws of the State of New Jersey and has never qualified to do business in the State of Texas, and was not at the time said contract was executed or at the time plaintiffs' original petition was filed on December 9, 1965, or at the present time, doing business in or present within the State of Texas. It further alleged that it has not expressly nor impliedly appointed or recognized as its agent to receive service of process of the State of Texas any individual, firm or official of the State; that it was engaged in the business of manufacturing pumps and construction equipment and machinery, and in conducting such business it has no assets of any kind in the State nor any employees who reside in the State, and has no office or place of business in the State, and is not carrying on any business within the State, and therefore is not subject to the jurisdiction of the court.

Appellants in their petition allege that appellee is a resident of New Jersey, and that it is present in the State of Texas, having done, and doing therein, a part of the

business for which it was incorporated, and that it does not maintain a place of regular business in this State which would be suitable for service and has not designated an agent for service and has thereby designated the Secretary of the State of Texas as agent upon whom service of process can be made in accordance with Article 2031b, Vernon's Annotated Texas Statutes; that on February 12, 1965, appellee entered into a written contract with appellants to purchase the outstanding stock and to assume the assets and liabilities of Tel-Go Manufacturing Corporation, which contract is to be performed partly in Harris County, Texas, and that plaintiffs have performed the obligations imposed upon them in connection with such contract.

The trial court, after hearing evidence, entered a judgment sustaining appellee's special appearance, quashing and vacating the citation and petition served upon appellee through the Secretary of State, and dismissing the cause of action for want of jurisdiction over the person of appellee, from which judgment appellants have perfected their appeal. The question before us is whether or not under Article 2031a, Sec. 4, V.A.T.S., service upon the Secretary of State constituted a valid service on appellee. This in turn depends upon whether or not there were established by the pleadings and the evidence sufficient contacts by Midland Products in Texas to constitute the doing of business by it in this State.

■ Appellants complain that the trial court erred in requiring them over their objection to assume the burden of proof of establishing the contacts upon which they relied to give the court jurisdiction over the person of appellee. We are of the opinion that the court improperly placed the burden of proof upon appellants. The general rule is that the party who files a plea in abatement must offer proof in support thereof. McDougald v. First Nat. Bank of Beaumont, Tex.Civ.App., 239 S.W.2d 145, writ ref., n. r. e. Rule 120a, T.R.C.P., does not state whether the burden of persuasion and

proof is on the plaintiff or the defendant, but its language does place on the defendant the burden of pleading lack of jurisdiction. E. Wayne Thode, Professor of Law at The University of Texas, in an article on Special Appearance, in Texas Law Review, February, 1964, Vol. 42, No. 3, at page 319, states:

"The language of the rule clearly places on the defendant the burden of pleading lack of jurisdiction. Although not spelled out as specifically as might be desired, the burden of producing evidence and the burden of persuasion are both on the defendant.

"Before turning to the language of rule 120a, the reason for the burden of proof being placed on defendant can be found in the fact that the motion to the jurisdiction is a plea in abatement, and the plea in abatement is not favored by the courts. The rule consistently applied throughout the history of Texas pleading, in the absence of specific statute, is that the party pleading in abatement has the burden of proof.

"An analysis of the language of rule 120a also makes evident that the defendant has the burden of proof. The special appearance includes, but is not limited to, the filing of the motion to the jurisdiction. * * *"

■ It is our view that since appellants established and fully developed all the contacts upon which they relied to confer jurisdiction of the court upon appellee, they have failed to show any harm with respect to the improper placing of the burden of proof upon them, and especially so since the hearing was by the court without a jury. Rule 434, T.R.C.P.

The court made no findings of fact or conclusions of law. It is necessary to look to the contract and the statement of facts in the case to determine whether or not the contacts proven were sufficient to constitute the minimum contacts necessary for conferring jurisdiction upon the person of appellee. The contract, which was executed by Tel-Go and Midland Products Company on February 12, 1965, provides in sub-

stance that Midland will purchase all of the outstanding stock of Tel-Go for the price of $10,000.00, payable one-half in 1965 and the remaining one-half in 1966, and Midland will assume all of the assets and all of the liabilities of Tel-Go which were detailed in an attached balance sheet dated January 31, 1965, and that the Gilbreath stock under contract would revert to Tel-Go on payment of the Gilbreath note, and that such stock will be considered as a part of that referred to in paragraph 2 of the agreement, as all of the outstanding stock of Tel-Go, and that the option to purchase the existing premises of Tel-Go will become the property of Midland, and the option will be amended to incorporate a maximum purchase price option of $25,000.00; that T. E. Crothers will join Midland as a salaried employee on or about March 1, 1965, at a starting salary of $750.00 per month, in addition to certain product license royalty fees, or over-ride, which are set out in detail, and which would apply to Midland as well as Mid-Mar, Ltd., Almar Equipment Company, and any of the Almar industries and/or licensees of Almar Industries, which would supersede any existing license arrangements in existence between Tel-Go and/or T. E. Crothers and Mid-Mar, Ltd.

Crothers testified at the hearing that he was employed in February of 1965 by Midland and in its employ from March 1 until October 23, 1965; that he was paid by Midland during such period of time by checks drawn on a New Jersey bank and mailed to him in Harris County, Texas; that he was furnished business cards, stationery and letterheads by Midland Products, which were mailed to him; that he was Midland's District Sales Manager to sell Midland Products, and that he traveled on the road, and that " * * * we had a warehouse here for a time, and were shipping materials from here to Midland's customers"; that the warehouse was located at 9103 Air Line Drive, and that they kept in the warehouse tampers, concrete rubbing machines, and that he (Crothers) had a Midland pump and their little demonstrator model that he took

to the dealers to show the inner workings of the pump; that he had at the time of the hearing four new upright tampers and two large plate-type tampers, one Midland pump and several demonstrators; that Tel-Go never sold Midland Products prior to the time of purchase, and that the products were manufactured by Midland; that such equipment belonged to Midland Products; that he maintained an office in Harris County during his employment, where he paid off debts and received accounts receivable, and shipped materials to Midland's dealers, and also maintained an office in his home where he took care of correspondence and some files pertaining to the sales work that he did for Midland; that there were Midland pumps sold in Houston and handled by Lee Supply Company in South Houston, and handled by several dealers in Houston; that in the local telephone book there was an advertisement reading "Midland Pumps Distributors, Inc., Embry Engine & Equipment Company" with their address and telephone number, and "Lee Supply Company" with their address and telephone number; that he was requested by Midland Products to store other equipment in the warehouse on Air Line; and that it was not necessary to store Midland pumps in his garage because they had the warehouse.

On cross-examination Crothers testified that his contract of employment was contained in the written purchase contract between Tel-Go and Midland Products, that Midland Products did not, as far as he knew, maintain a bank account in the State of Texas, that he did not have with him stationery furnished him by Midland Products, that the tampers which he testified to did not come from New Jersey, but the pumps did, that the tampers were here before he went to work for Midland, and that he had only one pump in the warehouse belonging to Midland, valued at about $200.00; that when Tel-Go sold to Midland, everything that he had became the property of Midland, everything in the warehouse, the bank account and accounts receivable "which we signed over to Midland, which they drew a

check on. We collected accounts receivable"; that there was nothing in the warehouse that was an asset that came to Texas from New Jersey other than the one pump; that the request made of him by Midland to store some materials in his garage was made when he was in Midland Park, N. J., in February or March, 1965; that to his knowledge Midland Products had no other employee other than himself in the State of Texas; that the contract made the basis of the case was negotiated by Mr. Marlow, President of Midland Products Company, who lived in Connecticut.

On re-direct examination, Mr. Crothers testified that the accounts receivable of Tel-Go assigned to Midland Products were in the sum of approximately $11,000.00, that he collected some of these which went mostly to paying the accounts payable, and some went to Midland Products; that the collection of the accounts was a part of his job; and that he was not required to carry a large inventory of pumps for Midland Products at that time.

Among the exhibits introduced in evidence are stubs of pay checks sent Crothers; one of the Midland Products Company business cards sent to Crothers which has printed in the lower left corner "Tom Crothers, District Sales Mgr. 230 Connie Street, Houston, Texas, 77022. Telephone 713-OX 7-5819"; a $15,000.00 note executed by Tel-Go by Thomas Crothers, President, and Billy Bob Holmes and Thomas Crothers, individually, dated June 19, 1964 and payable to E. C. Gilbreath; a letter written by Midland Products to Gilbreath dated June 9, 1965, stating that in February, 1965 Midland purchased Tel-Go and assumed all assets and liabilities thereof, including among the liabilities the Tel-Go note, which it confirmed it had assumed in the sum of $12,765.80 as of that date, and would continue to pay on the usual basis; and two letters addressed by Midland to Builders Equipment & Tool Company, P. O. Box 8508, Houston, Texas, Attn. Mr. E. C. Gilbreath, advising that Midland had acquired Tel-Go, and expressing an interest in integrating Builders Equipment & Tool Company into Midland's national distribution of contractors' equipment, thus in effect soliciting business by mail, and stating that all Tel-Go products would bear the Midland-Tel-Go name.

■■ We have concluded that as a matter of law appellants established that appellee had sufficient minimum contacts in this State so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice". The activities of appellee in Texas were continuous and systematic, at least during the time Crothers was in its employ on a salary for nearly eight months serving appellee in this State as its District Sales Manager. There is nothing in the record to show that it thereafter ceased to do business in Texas, but if it did it would be immaterial with respect to all causes of action arising out of the business there done. Mutual Reserve Fund Life Ass'n v. Phelps (1903), 190 U.S. 147, 23 S. Ct. 707, 47 L.Ed. 987; State of Washington ex rel. Bond & Goodwin & Tucker v. Superior Court (1933), 289 U.S. 361, 53 S.Ct. 624, 77 L.Ed. 1256; Leflar, Conflict of Laws, Sec. 39, p. 66. The contract in question had substantial connection with the State of Texas. The contract in question had substantial connection with the State of Texas. There is more involved here, however, than the mere entering into a contract by appellee with a resident of Texas " * * * to be performed in whole or part by either party in this State * * *." There were continuous activities consisting of collections of accounts receivable, the payment of debts, the maintenance of a warehouse where were stored equipment and machinery purchased by appellee from Tel-Go, besides the Midland pump and demonstrator, the assumption and payment on the usual basis of the unpaid balance of the Gilbreath note, the supplying of demonstrators, the assumption of all of the assets and liabilities of Tel-Go and the option to purchase its premises, and the shipping by appellant Crothers of materials to appellee's dealers. The purchase contract and the activities hereinabove described were sufficient to render appellee

amenable to this suit brought in the District Court of Harris County to enforce the obligation and liability arising out of such contract and activities in this State. International Shoe Co. v. State of Washington, etc., 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95; Gray Co. v. Ward, Tex.Civ.App., 145 S.W.2d 650, Dism., Judgment correct. See also Trinity Steel Co. v. Modern Gas Sales & Service Co., Tex.Civ.App.1965, 392 S.W.2d 861; McGee v. International Life Ins. Co. (1957), 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; Hanson v. Denckla (1958), 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed. 2d 1283; Hearne v. Dow-Badische Chemical Co., D.C., 224 F.Supp. 90. In light of the allegations in appellants' petition and appellee's special appearance, service of process in this case was properly made upon and through the Secretary of the State of Texas under Article 2031b.

Judgment reversed and rendered.