DAVIS

v.

ASANO BUSSAN CO. et al.

No. 14465.

United States Court of Appeals,
Fifth Circuit.

April 30, 1954.

Bennett B. Patterson, Cole, Patterson, Cole & McDaniel, Houston, Tex. (Joseph Kirchheimer, John L. Russell, Houston, Tex., of counsel), for appellant.

Vernon Booth Lowrey, Washington, D. C., for appellees.

Before HOLMES, RUSSELL and RIVES, Circuit Judges.

RIVES, Circuit Judge.

The principal questions to be decided are whether the complaint was properly served on Asano Bussan Company and on Fuji Foreign Trading Company,[1] both alien corporations and Nationals of Japan; and whether the district court acquired jurisdiction of those corporations. If the answer to any of those questions is favorable to either company, upon the record as it now stands, then a subsidiary question is presented as to whether the court erred in rendering its judgment of dismissal without first requiring the defendants to answer the interrogatories propounded under Rule 33, Federal Rules of Civil Procedure, 28 U.S.C.A.

The action was instituted in the district court of Harris County, Texas, and removed to the United States District Court because it was between a citizen of Texas, as plaintiff, and citizens or subjects of a foreign state, Japan, as defendants. 28 U.S.C.A. §§ 1332(2), 1441 (a). The facts upon which the district court based its judgment of dismissal[2] were developed from the pleadings, the returns of service, the affidavits filed by the defendants in support of the motion to dismiss, the counter-affidavit of the plaintiff, and the admissions of the defendants made pursuant to Rule 36, Federal Rules of Civil Procedure. There was conflict between the parties as to some of the facts, but those now to be stated were established without substantial dispute.

On September 30, 1950, Fuji entered into a contract with American Union Transport Company of New York for sale of a cargo of "Asano" brand Portland cement to be delivered at Mobile, Alabama, or Gulfport, Mississippi, shipment to be made not later than October 10, 1950. On October 3, 1950, American Union posted a letter of credit at Chase National Bank in New York in the sum of $178,605.00 to pay for this cement.

"Asano" brand of cement is manufactured by Japan Cement Company of Tokyo, Japan, of which company appellee Asano Bussan Company is a sales agent. Fuji could not purchase the cement from the Japan Cement Company, and hence assigned the letter of credit at Chase National Bank to Asano. Whether Fuji thereafter remained legally interested in the transaction does not clearly appear. Asano took this letter of credit to the Bank of Tokyo, Tokyo, Japan, and borrowed money on it to buy the required cement from Japan Cement Company. The cost of the cement was paid by Asano to Japan Cement Company. The documents were forwarded by the Bank of Tokyo to Chase National Bank and the cement was shipped on the S.S. Hai-Tee.

---

1. These two appellees, defendants below, are hereafter called Asano and Fuji, respectively.

2. As expressed by the district court: "Under Texas cases such as Frick [Co.] v. Wright ([23 Tex.Civ.App. 340] 55 S.W. 608) and Gray Co. v. Ward ([Tex.Civ. App.] 145 S.W.2d 650), * * * Utagawa was not such agent of the defendants Asano Bussan Co. and Fuji Foreign Trading Co. as to authorize service under Article 2031 and under federal cases,

as Pacific Employers Ins. Co. v. Parry Navigation Co. ([5 Cir.] 195 F.2d 372); Rosenthal v. Frankfort Distillers Corp. ([5 Cir.] 193 F.2d 137); and Polizzi v. Cowles Magazines ([5 Cir.] 197 F.2d 74), the incidental business which the corporate defendants transacted in this state was not such as to subject them to service under either Article 2031 or 2031(a). Hence, the motion to dismiss as to the two * * * corporate defendants * * * is sustained."

Due to claimed discrepancies in the documents, with which we are not here concerned, Chase National Bank dishonored the Bank of Tokyo draft against the letter of credit posted with it. The Bank of Tokyo then demanded that Asano repay the money advanced to it and Asano complied with that demand.

At that time the cement was on board the S.S. Hai-Tee off the port of Mobile. By coincidence, one Nobutsugu Utagawa, a director of Fuji, happened at the same time to be in New York on a business tour of his own. Asano cabled him requesting him to approach both American Union and Chase National Bank to settle the matter, which settlement he was unable to accomplish. Asano then requested Utagawa to take charge for Asano of selling the cement elsewhere, but an outright sale was found difficult. Asano then entrusted the cement to J. P. Smith of Fort Worth, Texas, on a consignment basis, Utagawa making the necessary arrangements. At the request of J. P. Smith, the cement, then en route, was eventually unloaded at Houston, Texas, about the middle of December 1950. Utagawa returned to Japan toward the end of December, 1950. The papers in the matter were deposited with the First National Bank, Houston, Texas. By the last of January, 1951, Smith had sold only 220 bags of the cement and had failed to pay for the cargo. It became obvious to Asano that the cement could not stand the humid climate of Houston much longer without serious deterioration. Asano then requested Utagawa, on its behalf and at its expense, to go to Houston to expedite the sale of the cement there. Utagawa left Japan for Houston at the beginning of February, 1951 carrying with him a power of attorney from Asano with reference to the cement at Houston. The terms of that power of attorney, though requested by interrogatories, do not appear in the record, but appellant's counsel state that it was produced by appellee's counsel after the court had rendered final judgment. During his stay in the United States, Utagawa was not called upon to show the power of attorney, but "the delivery orders, tax payment declaration and other documents were signed in the name of Asano Bussan as: N. Utagawa Asano Bussan Company." The affidavit of S. Yamada, President of Asano, shows that "Utagawa, after arriving at Houston, tried hard to sell the cement, but immediate disposal looked difficult. Japan Cement Company Ltd., seeing the predicament Asano Bussan was placed in, contacted their Central America Sales Agent and an expert in cement business, Mr. Sigfried Olsen, One Drumm Street, San Francisco 6, Calif. U. S. A. and asked him for his help, which Mr. Olsen did, and the cement was finally disposed of."

When Japan Cement Company cabled Sigfried Olsen, its Central America sales agent, requesting him to go to Houston on behalf of Asano, Mr. Olsen was in Central America and he did not reach Houston until March 6. He then remained in Houston for ten days when it became necessary for him to return to his office in San Francisco, California. On April 5 he came back to Houston where he found the cement "still unsold and the interest of all parties in great jeopardy." On April 19, Olsen accepted consignment of all of the cement from Utagawa. Mr. Olsen, trading as Sigfried Olsen Shipping Company, San Francisco, California, and not using the name of any other person, was then successful in disposing of the cement.

Summarizing some of the facts having particular relation to Texas, Utagawa admittedly on behalf of Asano, and whether also representing Fuji is not clear,[3] was in Texas in December of 1950 and arranged for the storage of the

---

3. Olsen's affidavit introduced by the defendants in support of their motion to dismiss contains the following:

   "Said Nobutsugu Utagawa was an officer and director of Fuji Foreign Trading Company, Inc., and was acting for said Fuji Foreign Trading Company, Inc., which in turn was under contract to Asano Bussan, which in turn had received said cement from Japan Cement Company

cement in three dock warehouses to be released to J. P. Smith on Utagawa's order as Smith paid for the cement under the consignment agreement. Utagawa returned to Houston bearing the power of attorney from Asano in February, 1951 and remained until he consigned the cement to Olsen on April 19, 1951 and thereafter until he was served with process in this action on April 25, 1951.

As stated, the facts just recited were established without substantial dispute. In addition, the plaintiff made affidavit that Utagawa was present in Houston on three or more different occasions representing Asano and Fuji and stated to plaintiff on those occasions that he was representing both corporations, that Fuji was the real owner and Asano only the ostensible owner, and that both corporations were interested in the transaction. The plaintiff's affidavit further states that Utagawa actually made sales out of the warehouse stock at Houston directly to purchasers and that, while there, Utagawa negotiated with the plaintiff and with three other named persons in an effort to sell the cement direct and through them as agents. The plaintiff's affidavit further claims that, during the time that Utagawa was in Houston, to the plaintiff's knowledge he was not only endeavoring to sell this shipment but was also trying to find a market for Japanese cement, and that Utagawa contacted many other persons in an attempt to find such a market.

The interrogatories propounded by the plaintiff to the defendants sought information in detail as to each and every transaction that took place with respect to this cement from the time it arrived at the port of Houston until it was finally sold and disposed of; who handled the release of the shipment and each portion of the same; each sale made from the shipment and the person to whom sold; the original or photostatic copy of the power of attorney executed by Asano to Utagawa, and the details of each transaction by Utagawa under said power of attorney, and which of those transactions were conducted in Texas; the details of the transactions with respect to this shipment of cement had with Adam H. Harper of New Orleans, Louisiana, with J. P. Smith of Fort Worth, Texas, and with Sigfried Olsen, and also with Stevenson, Fitzgerald and Dunlap, Inc., of Washington and New York. The voluminous interrogatories seek to search out in detail everything that had been done by either of the defendants with reference to this shipment of cement, and also any other business done by either during the years 1950, 1951 and 1952 in Texas or in other parts of the United States.

The interrogatories were served on November 3, 1952, but due to the absence of defendants' counsel from Houston, did not come to his attention until November 17, 1952. On November 20, the defendants filed objections to the interrogatories stating that they agreed substantially to the request for admissions as proposed and further that,

"Defendants submit that the affidavits already on file in connection with said Motion, taken together with the Admissions now being made are sufficient for the determination of said Motion; that on the face of them the interrogatories to which this objection goes, have to do with the final merits of the case, being in minute detail on transactions that have nothing to do with said Motion; and for that matter in certain respects being in minute detail on matters that would be inadmissible at final hearing on the merits."

The plaintiff replied to the objections representing "that the information which plaintiff seeks * * * is necessary to enable the plaintiff to defend the motion to dismiss filed herein by the said defendants", and urged that the de-

Ltd., the manufacturer, which at this stage of the proceedings, was the real party at interest, and which was exclusively represented in this business by the Affiant."

fendants be required to answer the interrogatories. The court withheld action on the objection to the interrogatories and did not act thereon, but on January 5, 1953 entered a final judgment dismissing the cause for lack of jurisdiction over the alien corporations.

The complaint is based upon two claims, each having reference to this cement. One of the claims is for breach of an alleged contract of sale of the cement to Robert Bloch, a resident of New York City, the claim having been assigned by Bloch to the plaintiff. The other claim is for breach of an alleged contract to name the plaintiff as the exclusive sales agent for the cement.

The claimed service of process was effected before the removal of this action from the Texas state court to the Federal District Court pursuant to one or the other of several provisions of the Revised Civil Statutes of Texas, Vernon's Ann. Civ.St.[4] The sheriff's return was to the effect that he summoned Asano and Fuji by delivering a copy of the summons and complaint to Utagawa as the agent of each of such companies. The certificate of the Secretary of State shows service upon the Secretary of State in accordance with the provisions of Article 2031a, Revised Civil Statutes of Texas, and that the Secretary of State forwarded copies of the citation by Registered Mail to Asano and to Fuji in the City of Tokyo, Japan, in accordance with the provisions of said Article.

The appellees insist that Fuji's interest in the transaction had ceased before the cement came to Houston. They concede that, if Utagawa transacted business in Houston as agent for Asano of such nature as to bring Asano into the jurisdiction for service, that "service on the Secretary of State was good, whether on Utagawa or not." We come then to the question whether Asano transacted or did business in Texas of such nature as to subject itself to the jurisdiction of the Texas state courts.

This being a diversity case or more accurately an alienage case governed by

---

4. Article 2029 providing for service against corporations generally reads as follows:
   "In suits against any incorporated company or joint stock association, the citation may be served on the President, Vice President, Secretary, Cashier, Assistant Cashier, or Treasurer of such company or association, or upon the local agent of such company or association in the county where the suit is brought, or by leaving a copy of the same at the principal office of the company during office hours. If neither the President, Vice President, Secretary, Assistant Secretary, Cashier, Assistant Cashier, or Treasurer reside in the county in which suit is brought, and such company or association has no agent in the county, then the citation may be served upon any agent representing such company, corporation, or association in the State."
   Article 2031 provides for service on foreign corporations as follows:
   "In any suit against a foreign corporation, joint stock company or association, or acting corporation or association, pending or hereafter filed in this State, to which any foreign corporation is a party or is to be made a party, process may be served on the President, Vice President, Secretary, Treasurer, General Manager, or upon any local or travelling agent or travelling salesman of such corporation, joint stock company or association, or acting corporation or association in this State."
   Article 2031–1 provides in effect that Article 2031 is cumulative and that service can be had upon foreign corporations by any other method provided by law. Article 2031a is an alternative method of serving process. The statute is lengthy and we will not quote it in full. The statute provides first that no foreign corporation shall transact nor do business without appointing a resident agent. It then provides that if such corporation shall transact or do any business in the State without designating a resident agent, then service may be had by serving the Secretary of State.
   Section 4 provides that duplicate copies of process shall be served upon the Secretary of State, with a statement of the address of the home office of the corporation, and such service of process shall be complete upon such delivery; that the Secretary of State shall forward a copy of process by Registered Mail. The certificate of the Secretary of State is competent and sufficient proof of service.

like principles,[5] we must first determine whether that question is answered in the affirmative by the state law of Texas, and, if so, secondly, whether such state law meets the requirements of the Federal Constitution. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 440, 72 S.Ct. 413, 96 L.Ed. 485; Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193, 194; Rosenthal v. Frankfort Distillers Corp., 5 Cir., 193 F.2d 137, 141; cf. Lone Star Package Car Co., Inc. v. The Baltimore & Ohio Railroad Co., 5 Cir., 212 F.2d 147.

The learned district judge, who decided this case below, has noted in an opinion in another late case, Insurance Company v. Lone Star Package Car Co., 107 F.Supp. 645, 655, that "There is little recent authority in this state upon the subject and the Texas cases are not of great help." That opinion contains an illuminating discussion of the present state of the Texas state law in which, as we observed in Footnote 3 to our opinion on the appeal of the Lone Star Package Car Co. case, supra, the district judge differs somewhat with the views expressed by this Court in Rosenthal v. Frankfort Distillers Corp., supra, and in Robbins v. Benjamin Air Rifle Co., 5 Cir., 209 F.2d 173, and the true meaning of the Texas state law can be authoritatively settled only by the Supreme Court of Texas. We may further observe, however, that the Texas Statutes referred to in Footnote 3 to this opinion, supra, do not affirmatively require as a condition to the service of process on foreign corporations that the corporation be doing business within the state, and such requirement is found to exist by the Court of Civil Appeals of Texas in what is apparently the latest state case on the subject in reliance upon United States Supreme Court cases exclusively. Gray Co. v. Ward, 145 S.W.2d 650, 653. Without undertaking more accurately to determine the requirements of Texas state law, the considerations now to be stated make us of the opinion that, under any view of such requirements, Asano transacted or did business in Texas of such nature as to subject itself to the jurisdiction of the Texas state courts.

We appreciate the predicament in which Asano was placed when the American Union Transport Company refused to go through with its contract for the purchase of the cargo of cement after it had been shipped from Japan and was lying off the port of Mobile. It was still an act of interstate or foreign commerce for Asano to consign the cement to J. P. Smith of Fort Worth, Texas, and upon his instructions to unload it at Houston. We are doubtful, however, whether Asano could then retain possession of the cement in its name in the warehouses at Houston, subject to the control of its agent, Utagawa, then located in Texas, and to be released by Utagawa to the consignee Smith in installments as Smith paid for the cement under the consignment agreement. It is not necessary for us definitely to decide that that conduct was so local in character as to subject Asano to the jurisdiction of the Texas state courts. Certainly, after Smith had disposed of only 220 bags of the cement and had then failed to carry out his consignment agreement, the cement stored in the three warehouses in Houston was not in foreign or interstate commerce. It was then fully subject to state jurisdiction. It may be that, even then, Asano acting in Japan or outside of Texas could have sold or disposed of the cement located in Texas. Certainly, it could not do so by an agent himself located in Texas, without becoming subject to the jurisdiction of that State. When Asano, by its agent Utagawa then in Texas, undertook to sell, consign or dispose of in any way the approximate 200,000 bags of cement located in the

5. Maxfield v. Canadian Pacific Railway Co., 8 Cir., 70 F.2d 982, 984; 28 U.S.C.A. §§ 1332, 1652; Moore's Commentary on the United States Judicial Code, p. 154; 23 American Jurisprudence, Foreign Corporations, Sec. 307; Guaranty Trust Co. v. York, 326 U.S. 99, 111, 112, 65 S.Ct. 1464, 89 L.Ed. 2079, the reasoning of which seems equally applicable to alien corporations.

three warehouses in Houston, it transacted or did business in Texas in such manner as to subject itself to the jurisdiction of the Texas state courts.

That this is true would appear more clearly from a consideration of related Texas Statutes, Articles 1529 and 1536 of the Revised Civil Statutes of Texas, requiring any foreign corporation "desiring to transact or solicit business in Texas" to secure a permit under penalty of denial of its right to maintain any suit in that State. As Judge Connally observed in Insurance Company v. Lone Star Package Car Co., supra, 107 F.Supp. at pages 656–657:

> "The Texas courts have construed this statute very strictly, and the Supreme Court of Texas has held on more than one occasion that a single isolated transaction by the foreign corporation, in line with its corporate activities, would be sufficient to constitute its 'doing business' for this purpose, Normandie Oil Corp. v. Oil Trading Co., 139 Tex. 402, 163 S.W.2d 179, and cases there cited."

See also Glo Co. v. Murchison, 5 Cir., 208 F.2d 714.

■ Appellees call attention that at that time both Asano and Fuji were alien enemy corporations in the export business in Japan under supervision of American Eighth Army Headquarters and, hence, that a local or intrastate transaction in Texas would not be in line with the corporate activities or in pursuance of the general business authorized to be done by either of them. A similar argument, though based on a weaker factual situation, has often been made by foreign corporations, and the courts have consistently held that "the corporation is estopped to set up the unlawfulness of its transactions in bar of jurisdiction or remedies which would exist were it doing business lawfully, or to defeat the jurisdiction of the state courts when dealing with its property within the state * * *." 23 Am. Jur., Foreign Corporations, § 499, p. 511.

From a consideration of the Texas cases cited, it would seem clear that Asano could not have maintained a suit in the Texas state courts; if, for example, its first consignee, J. P. Smith, had wrongfully secured the release by Utagawa of some of the cement, as by giving a bad check or in any other way; or if any other agreement with Utagawa in Texas or which called for local action by the agent Utagawa in Texas had been breached by the other party to the agreement. Those suppositions are, of course, not the present case, but they are corollary thereto and serve to illustrate the fact that Asano transacted or did business in Texas in such manner as to subject itself to the jurisdiction of the Texas state courts.

■ The claims sued on are connected with the activities of Asano in the United States and in Texas. We entertain no doubt that maintenance of the suit does not offend "traditional notions of fair play and substantial justice" and, hence, is not precluded by the due process clause of the Federal Constitution. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; United States v. Scophony Corp. of America, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091; Travelers Health Association v. Virginia ex rel. State Corp. Comm., 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485. We hold that, insofar as Asano is concerned, the plaintiff made out at least a prima facie case to the effect that the complaint was properly served on Asano and that the district court acquired jurisdiction.

■ As to Fuji, the present record leaves in doubt the question of whether Utagawa was acting as agent for Asano only or for both Asano and Fuji. The plaintiff was not required to rely exclusively on affidavits furnished by the defendants for answer to that question, but had a right to employ interrogatories [6] to develop fully the authority or

---

6. Under Rule 33, Federal Rules of Civil Procedure, the interrogatories could be served after commencement of the action and before issue had been joined.

lack of authority of Utagawa as an agent for Fuji. As the record now stands,[7] we think the district court had full jurisdiction over Asano, and had the power to determine its jurisdiction over Fuji, and, for that purpose, it should have received the complete information called for by the interrogatories before entering final judgment. The judgment is, therefore, reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

Morris Pottish, New York City (George W. Martin, New York City, and Herman E. Hoberman, Brooklyn, N. Y., on the brief), for plaintiff-appellant.

Albert H. Buschmann, Asst. U. S. Atty., Jamaica, N. Y. (Leonard P. Moore, U. S. Atty., and Arthur D. Hickerson, Asst. U. S. Atty., Brooklyn, N. Y., on the brief), for defendant-appellee.

Before CLARK, HINCKS, and HARLAN, Circuit Judges.

---

7. Our holding that prima facie the district court had jurisdiction to proceed to a trial on the merits against Asano is based upon the present record, and it may be possible that a more complete development of the facts would require a different holding.