Donald **EATON**; Jane **Levin**; Tema **Burke**; J. Myron **Rosen** and Barbara R. **Rosen**; Joel D. **Kulick**; Mona **Israel**, Robert **Tavlin**, Joanna T. **Fenstermacher** and James B. **Sprague**, as Partners of Jay Bee Associates, a Florida General Partnership; and Chambertin Corporation, a Florida corporation, Plaintiffs-Appellants,

v.

**DORCHESTER DEVELOPMENT, INC.,** a Florida corporation, Defendant-Appellee.

No. 82–5218
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Nov. 29, 1982.

Schwartz & Nash, P.A., H. Hugh McConnell, Miami, Fla., for plaintiffs-appellants.

John Farrell, Robert A. Glassman, Miami, Fla., for defendant-appellee.

Appeal from the United States District Court for the Southern District of Florida.

Before HILL, VANCE and ANDERSON, Circuit Judges.

VANCE, Circuit Judge:

Plaintiffs sued in the district court for the Southern District of Florida seeking rescission of contracts for the purchase from defendants of condominium units in the Dorchester Condominiums in Naples, Florida.[1] The complaint based jurisdiction on the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701–1720,[2] alleging that Dorchester Development violated the Act by entering into the contracts without providing the purchasers with a printed property report as required by section 1703(c) and section 1707.[3]

Dorchester Development admitted that it had not provided the property report, but challenged subject matter jurisdiction. Section 1702(b)(1) exempts from the Act's coverage all "subdivisions" containing less than one hundred units. Dorchester Development argued that its condominium contains only eighty-six units.[4] The complaint had not alleged facts to show that the Dorchester exceeded one hundred units, though it did assert that the parcels of the Dorchester were "sold and offered for sale to the public as part of a common promotional plan."

Plaintiffs responded that the Dorchester was not exempt from the Act because it was part of a larger "subdivision"[5] known as Pelican Bay containing more than one hundred units, being developed as what the

---

1. In addition to rescission, plaintiffs also prayed for return of all deposits, attorney's fees and costs.

2. Specifically, subject matter jurisdiction was based on section 1719 of the Act, which establishes concurrent jurisdiction in the district courts and the state courts.

3. The complaint alleged a further violation of the Act in that the contracts failed to provide for written notice and a twenty-day opportunity for the purchaser to remedy any default, as required by section 1703(d). One purchaser also alleged a pendent claim for restitution of all money advanced on the grounds that the contract was void under state contract law.

4. 15 U.S.C. § 1702(b) provides:

Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions requiring registration and disclosure (as specified in section 1703(a)(1) of this title and sections 1704 through 1707 of this title) shall not apply to—

(1) the sale or lease of lots in a subdivision containing fewer than one hundred lots which are not exempt under subsection (a) of this section ....

5. 15 U.S.C. § 1701(3) defines "subdivision" as: any land which is located in any State or in a foreign country and is divided or is proposed to be divided into lots, whether contiguous or not, for the purpose of sale or lease as part of a common promotional plan ....

Act terms a "common promotional plan."[6] They contended that defendants had acted in concert with another developer, Power Corporation, to develop the Dorchester as part of a project which included a second condominium, the Grosvenor. Plaintiffs submitted a promotional brochure in which Power Corporation referred to itself as the "owner/developer/builder" of both the Dorchester and the Grosvenor and stated that the Grosvenor was continuing the "standard of excellence" that Power Corporation had begun several years ago with the Dorchester. They also submitted a magazine advertisement in which a realtor, Power Realty, Inc., promoted "Power Corporation luxury condominiums" including the Dorchester and the Grosvenor. Finally, plaintiffs submitted copies of status sheets from the Florida Department of State showing that Power Corporation and the Dorchester had the same president and director and the same registered office.

Plaintiffs moved to amend their complaint in order to explicitly state the factual basis of jurisdiction. They also requested that the court reserve ruling on the question of jurisdiction until they could use discovery to develop additional jurisdictional facts. Plaintiffs began discovery by noticing for deposition and serving subpoenas duces tecum upon William Higgs, the president of both the Power Corporation and the Dorchester. The subpoenas duces tecum implied that one purpose for the deposition was to establish that the Dorchester was part of a larger subdivision subject to the Act.

The depositions were set for January 5, 1982, but on December 29, 1981 the district court dismissed the suit for lack of subject matter jurisdiction. The court's one-paragraph order stated that because the Dor-

chester contained less than one hundred units it was exempt from the Act and thus the court was divested of subject matter jurisdiction. The court gave no other reasons for this result and made no explicit findings of fact or law. We reverse.

I

Given the importance of subject matter jurisdiction and the fact that a rule 12(b)(1) motion allows the defendant to attack the truth and sufficiency of the matters alleged as well as the formal sufficiency of the complaint, tricky questions of jurisdictional discovery arise. The issue of discovery of facts supporting or negating the existence of subject matter jurisdiction has resulted in part from the modern deemphasis of fact pleading and the increased reliance on pretrial discovery. Note, The Use of Discovery to Obtain Jurisdictional Facts, 59 Va.L.Rev. 533, 546–47 (1973). Since the pleadings may not reveal whether the court has jurisdiction, some sort of discovery may be necessary. 8 C. Wright & A. Miller, Federal Practice and Procedure § 2009 (1970).

It is now clear that federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 n. 13, 98 S.Ct. 2380, 2389 n. 13, 57 L.Ed.2d 253 (1978); *Washington v. Norton Manufacturing Co.,* 588 F.2d 441, 443 (5th Cir.), *cert. denied,* 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2009. The problem is the degree to which such discovery is mandatory or discretionary. We have held that such jurisdictional discovery is not entirely discretionary, and this appears to be the better view.[7]

---

**6.** *See supra* note 4. 15 U.S.C. § 1701(4) defines "common promotional plan" as:
   a plan, undertaken by a *single developer or a group of developers acting in concert,* to offer lots for sale or lease; where such land is offered for sale by such a developer or group of developers acting in concert, and such land is contiguous or is known, designated, or *advertised as a common unit* or by a common name, such land shall be presumed,

without regard to the number of lots covered by each individual offering, as being offered for sale or lease as part of a common promotional plan . . . . (emphasis added).

**7.** One commentator put the issue this way:
   [If] the jurisdictional question is genuinely in dispute and the court cannot resolve the issue in the early stages of the litigation . . .

In *Davis v. Asano Bussan Co.,* 212 F.2d 558 (5th Cir. 1954), the former fifth circuit held that plaintiff was entitled to discovery of disputed jurisdictional facts. After filing its complaint, plaintiff served defendants with interrogatories seeking detailed information about transactions at issue in the case. When defendants objected to these voluminous interrogatories, plaintiff responded that the information sought was necessary to establish the disputed jurisdictional facts. *Id.* at 561–62. The trial court withheld action on the interrogatories for a time and then dismissed the case for lack of jurisdiction. The circuit court reversed, holding that the district court should have received the complete information called for by the interrogatories before entering final judgment. *Id.* at 565.

Similarly, in *Blanco v. Carigulf Lines,* 632 F.2d 656 (5th Cir. 1980), the district court relied upon pleadings and party affidavits alone in making the subject matter jurisdiction determination. In reversing the former fifth circuit noted that defendants' answers to interrogatories were overdue, *id.* at 657, 658, and held that plaintiff was entitled to elicit material through discovery before a claim could be dismissed for lack of jurisdiction. *See also Chatham Condominium Associations v. Century Village, Inc.,*

597 F.2d 1002, 1012 (5th Cir. 1979) ("dismissal for lack of subject matter jurisdiction prior to trial, and certainly prior to giving the plaintiff ample opportunity for discovery, should be granted sparingly"); *Williamson v. Tucker,* 645 F.2d 404, 414 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) (prior to 12(b)(1) dismissal when jurisdictional facts are in dispute, "the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss. Thus, some courts have refused to grant such a motion before plaintiff has had a chance to discover facts necessary to establish jurisdiction").

■ The district judge dismissed this complaint before plaintiffs had been able to complete any discovery at all. The subpoenas duces tecum served on William Higgs, as president of both the Dorchester and Power Corporation, sought records of both corporations so that the commonality of the two condominium projects could be documented. Plaintiffs sought books of account showing expenditures for advertising and payroll for the development of the Dorchester and the Grosvenor; copies of all advertisements for the Dorchester and/or the Grosvenor; construction loan commitments

---

[then] discovery will certainly be useful and may be essential to the revelation of facts necessary to decide the issue. The question of jurisdictional discovery in this context calls for a balance of potentially conflicting interests. On one hand, the avowed purpose of the Federal Rules is to minimize the importance of procedural technicalities and to allow a court to decide cases on the merits. On the other, a court should decide only those cases that are properly before it, and the defendant has a legitimate and protectable interest in avoiding the time, effort, and expense of discovery when the court's jurisdiction to hear the merits may be lacking. In balancing the factors, the protective measures suggested by Rule 26(c) become significant, if not controlling. Because Rule 26(c) gives the court the discretion to limit the scope of discovery and to place terms and conditions on its exercise, the court is able to form its order to minimize the conflict between the relevant interests. The court can serve both interests by allowing discovery and, where necessary, forming protective or-

ders to shield the defendant from vexation or oppression.

Thus, though numerous courts have indicated that they have discretion in granting or denying jurisdictional discovery, this is not exactly correct. In the final analysis, a court does not have discretion to grant or deny a request for jurisdictional discovery [when jurisdictional facts are in dispute]. Rather, it is appropriate to speak in terms of a qualified "right" to jurisdictional discovery when a court's jurisdiction is genuinely in dispute. In order to satisfy the Federal Rules' implicit policy that cases be decided on the merits, a court should order discovery while protecting the defendant's interests where necessary through a Rule 26(c) protective order. Thus, the element of discretion, if any, exists not with respect to whether there will be jurisdictional discovery, but rather only with respect to the form that the discovery will take.
Note, The Use of Discovery to Obtain Jurisdictional Facts, 59 Va.L.Rev. 533, 546–47 (1973) (footnotes omitted).

relating to the two condominiums; copies of all filings with the Florida Department of Business Regulation for the Dorchester and the Grosvenor; stock transfer ledgers showing past and present ownership of the Dorchester and the Power Corporation; lists of purchasers and prospective purchasers of units of the Dorchester and the Grosvenor. This material could well reveal facts to reinforce plaintiffs' assertion that the two condominiums were offered in aggregate advertisements,[8] that units were sold through common sales offices by salesmen with authority to sell units from either condominium or who would show units from both condominiums to a single purchaser. These factors were considered decisive by the ninth circuit in *United States v. Dacus,* 634 F.2d 441, 444 (9th Cir. 1980). In *Dacus,* the court found a "common promotional plan" under section 1701(4) even though the lots were sold from developments with different names. Similarly, the Department of Housing and Urban Development, Office of Interstate Land Sales Registration, in its guidelines for interpreting regulations promulgated by HUD under the Act, set forth several factors considered by HUD in determining whether or not a "common promotional plan" exists. 44 Fed. Reg. 24010, 24011 (1979). The factors included a thread of common ownership; common sales agents; common sales facilities; common advertising; common inventory.

We hold that the district court's dismissal for lack of subject matter jurisdiction was premature. Plaintiff must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction. As we said in *Blanco,* "the rules entitle a plaintiff to elicit material through discovery before a claim may be dismissed for lack of jurisdiction." 632 F.2d at 658.

## II

We leave the jurisdictional issue for the district court's determination after appropriate discovery. The close relationship it bears to discovery in this case and the interests of judicial economy, however, lead us to include the issue in our discussion.

*Williamson v. Tucker* sets out the framework of analysis that is proper for appellate review of 12(b)(1) dismissals. In *Williamson,* purchasers of joint venture interests in a parcel of undeveloped real estate had sued for rescission of the joint venture agreements. The plaintiffs based their federal claim on the Securities Act of 1933 and the Securities Exchange Act of 1934, contending that the joint venture interests and the notes issued in payment for the real estate were "securities" under the Acts. After extensive discovery and affidavits from a number of parties, briefs and oral argument, the district court dismissed for want of subject matter jurisdiction. 645 F.2d at 412.

The central inquiry under the *Williamson* analysis is whether the 12(b)(1) motion attacked the complaint on its face or whether the motion attacked the asserted factual basis of jurisdiction. If the motion to dismiss is a facial attack on the complaint, then the reviewing court must consider the allegations in the plaintiff's complaint as true. *Id.* These protections are similar to the procedural safeguards retained when the court grants a 12(b)(6) motion for failure to state a claim. Such protections do not attach when the district court's jurisdictional decision is based upon

---

8. Plaintiffs presented one advertisement that read:

> Power Realty Inc.
> Specializing in
> POWER
> Corporation
> Luxury Condominiums
>
> ———
> Dorchester—Grosvenor
> Hyde Park . . .
> All In Prestigious Pelican Bay

> King's Lake.
> Featuring Wooded
> Homesites.
> ———
> Power Realty Inc.
> Realtor®
>   6001 Pelican Bay Boulevard
>   Naples, Florida.
>   [Telephone Number]

the court's resolution of disputed facts.[9] Appellate review of facial attacks is restricted to an examination of whether the complaint sufficiently alleges jurisdiction, assuming that all allegations in the complaint are true. *See Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981).

This case does not involve a dismissal predicated upon the facial insufficiency of the complaint.[10] In its order granting defendant's 12(b)(1) motion, the district court appears to have based its decision on findings of fact, specifically that the Dorchester condominium was not part of a common promotional plan exceeding one hundred lots, and that, therefore, the defendant's development was exempt from the scope of section 1702(b) of the Act. To determine whether the Dorchester is subject to the Act and whether jurisdiction exists, the district court must have determined whether the Dorchester condominiums were part of a subdivision developed as a common promotional plan exceeding one hundred lots. That determination depended, for example,

upon whether the Dorchester was contiguous to the Grosvenor; whether units of both condominiums were being sold through common sales agents and common advertising; and whether there was a thread of common ownership between the two corporate developers.

The *Williamson* court noted that appellate review of jurisdictional factfinding is governed by the general principle that trial court findings of fact must be accepted unless "clearly erroneous." However, "if the district court bases its decision on its own resolution of disputed facts it may be required, at the very least, to identify and explain the factual determination it has made." *Williamson,* 645 F.2d at 413–14.

As in *Williamson,* review here is difficult because the district court did not give any reasons for its decision or make any specific findings of fact:

> In the absence of such a statement, an appellate court can decide the appeal only with great difficulty and only in two limited circumstances. First, an appel-

---

**9.** The former fifth circuit has accepted the reasoning of the third circuit that:

> The factual attack ... differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Mortenson v. First Fed. Sav. & Loan,* 549 F.2d 884, 891 (3d Cir. 1977) (footnote omitted), *quoted in Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) *and Chatham Condominium Ass'ns v. Century Village, Inc.,* 597 F.2d 1002, 1012 (5th Cir. 1979). For this reason, Judge Hill has written that "dismissal for lack of subject matter jurisdiction prior to trial, and certainly prior to giving the plaintiff ample opportunity for discovery, should be granted sparingly." *Chatham* at 1012. In *Chatham,* discovery had "barely begun" at the time of dismissal. Judge Hill concluded that "with the facts not fully developed, a fair and conclusive resolution of the jurisdictional issue cannot be made at this stage of the proceedings." *Id.* at 1012.

**10.** The complaint here clearly alleges jurisdiction based upon the Interstate Land Sales Full Disclosure Act. Plaintiffs' complaint asserted that parcels of the Dorchester were "sold and offered for sale to the public as part of a common promotional plan." The complaint also contended that the parcels were not exempt under section 1702 of the Act, the provision which exempts subdivisions of less than one hundred lots from coverage. We conclude that the complaint on its face sufficed to give Dorchester notice of the jurisdictional grounds that were being asserted.

Following Dorchester's answer raising the issue of subject matter jurisdiction, plaintiffs moved to amend their complaint in order to elaborate further on the allegations concerning the existence of a common promotional plan exceeding one hundred units. The district judge never ruled on this motion, but, given the liberal freedom to amend pleadings contemplated by the Federal Rules, we see no reason why the amendment would have been denied. Under the proposed amendment to plaintiffs' complaint, it is clear that they have alleged facts which, if taken as true, support a finding of subject matter jurisdiction sufficient to prevail over a 12(b)(1) attack.

late court may determine for itself, on the basis of the record and any statements made by the district court, what the basis of the district court's decision was and what, if any, implicit factual findings it made.... Second, an appellate court may reverse a decision of the district court dismissing a case for lack of subject matter jurisdiction if it finds that the record cannot be construed in any way so as to support such a dismissal. 645 F.2d at 414 (footnote omitted). The court explained in a footnote that:

> Conversely, were an appellate court to find that dismissal for lack of subject matter jurisdiction would be appropriate if disputed factual issues had been resolved by the district court in a particular way, and the district court had failed to explain its resolution of such factual issues, then the appellate court would have to remand for such an explanation before it could exercise its appellate function.

*Id.* at n. 8.

The argument against premature dismissal on 12(b)(1) grounds is particularly strong when the basis of jurisdiction is also an element of plaintiffs' cause of action on the merits. The *Williamson* court quoted extensively from *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1945) in support of the proposition that the "Supreme Court has enumerated a strict standard for dismissals for lack of subject matter jurisdiction when the basis of jurisdiction is also an element in the plaintiff's federal cause of action." 645 F.2d at 415. In *Bell* the Supreme Court stressed the difference between dismissal for lack of subject matter jurisdiction and dismissal for failure to state a claim upon which relief may be granted. Plaintiffs had sued the FBI for money damages, basing jurisdiction on federal questions arising under the fourth and fifth amendments. The Court held that federal jurisdiction did exist, despite the possibility that recovery would not be available under federal law. If federal law would not permit relief, then dismissal should be based on 12(b)(6), not 12(b)(1). The Court in *Bell* recognized a narrow ex-

ception to its holding: dismissal may be proper "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction, or where such a claim is wholly insubstantial and frivolous." 327 U.S. at 682, 66 S.Ct. at 776.

Where the jurisdictional issues· are intertwined with the substantive merits, "the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other." *Chatham Condominium Associations v. Century Village, Inc.,* 597 F.2d 1002, 1011 (5th Cir. 1979). *See also Land v. Dollar,* 330 U.S. 731, 735, 67 S.Ct. 1009, 1011, 91 L.Ed. 1209 (1947); *Spector v. L.Q. Motor Inns,* 517 F.2d 278, 284 (5th Cir. 1975), *cert. denied,* 423 U.S. 1055, 96 S.Ct. 786, 46 L.Ed.2d 644 (1976); *McBeath v. Inter-American Citizens Committee,* 374 F.2d 359, 363 (5th Cir.), *cert. denied,* 389 U.S. 896, 88 S.Ct. 216, 19 L.Ed.2d 214 (1967). *Cf. Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980) (dismissal for lack of jurisdiction of a suit under 42 U.S.C. § 1983 after a full evidentiary hearing was not error). The *Williamson* court observed that:

> The Supreme Court has made it clear that in [this] situation no purpose is served by indirectly arguing the merits in the context of federal jurisdiction. Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) (for failure to state a claim upon which relief can be granted) or Rule 56 (summary judgment)—both of which place greater restrictions on the district court's discretion.

645 F.2d at 415 (footnote omitted).

In the present case the question of subject matter jurisdiction is not only a ques-

tion of fact but also is intimately related to the substantive merits of the plaintiffs' claim. Jurisdiction depends on the applicability of the statutorily defined terms "subdivision" and "common promotional plan" to facts not yet developed. The heart of the dispute between the parties is whether or not Dorchester condominiums has a duty to comply with section 1702 of the Act. If it does have a duty under the Act, then the federal courts have subject matter jurisdiction.

Since a determination of whether the court has subject matter jurisdiction will hinge on whether the defendant owes a duty to plaintiffs under the Act, that determination will, at the same time, effectively decide the merits of plaintiffs' claim. Jurisdiction is thus inextricably intertwined with the merits of the plaintiffs' case.

Because the jurisdictional facts implicate the merits of the case, the strict standard enunciated in *Bell v. Hood* and *Williamson* applies. We hardly anticipate a finding that plaintiffs' claim is clearly immaterial, made solely for the purpose of obtaining jurisdiction or wholly insubstantiated and frivolous. On the contrary, plaintiffs have made a fairly substantial showing of subject matter jurisdiction, even without the discovery they desire.

We reverse the district court's dismissal for lack of subject matter jurisdiction and remand for further discovery of jurisdictional facts. While we reach no conclusion concerning the merits of plaintiffs' federal claim, we note that the high standard of *Bell* and *Williamson* apparently suggests that this case ought not be dismissed for lack of jurisdiction.

REVERSED and REMANDED.