**Dissenting Opinion Filed August 18, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-20-00021-CV

## MICHAEL J. PETER, Appellant

v.

## JOSHUA STERN, Appellee

### On Appeal from the 160th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-18-18146

## DISSENTING OPINION

Before Chief Justice Burns[1] and Justices Pedersen, III, and Evans
Dissenting Opinion by Justice Evans

Appellant Michael J. Peter, a Florida resident, appeals the trial court's denial of his special appearance contesting personal jurisdiction regarding appellee Joshua Stern's claims for fraud and breach of contract pertaining to a failed business venture in the Republic of Panama. Stern has no evidence of any intentional contact by Peter with Texas or evidence this transaction has any connection to Texas. Although it is uncontested Texas has jurisdiction over others connected with Stern's claims, Texas

---

[1] The Honorable David L. Bridges, Justice, participated in the submission of this case, however, he did not participate in the issuance of this opinion due to his death on July 25, 2020. Chief Justice Robert Burns has substituted for Justice Bridges and has reviewed the briefs and the record before the Court.

does not have jurisdiction over Peter. Because Peter challenges the legal and factual sufficiency of the evidence supporting the trial court's denial of his special appearance and because I agree there is no evidence in this record to support the trial court's ruling, I would reverse the trial court's order and render judgment granting Peter's special appearance. Because the majority concludes otherwise, I respectfully dissent.

We review de novo the trial court's determination of a special appearance. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). Where, as here, the trial court did not issue findings of fact and conclusions of law with its ruling, we imply all facts that are supported by the evidence to uphold the trial court's determination. *Moki Mac*, 221 S.W.3d at 574.

The defendant bears the burden of negating all bases of personal jurisdiction alleged by the plaintiff. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Once the defendant negates the bases alleged, the plaintiff must show, as a matter of law, that the court has personal jurisdiction over the nonresident defendant. *Alliance Royalties, LLC v. Boothe*, 329 S.W.3d 117, 120 (Tex. App.—Dallas 2010, no pet.); *Assurances Generales Banque Nationale v. Dhalla*, 282 S.W.3d 688, 695–96 (Tex. App.—Dallas 2009, no pet.).

Jurisdiction may be negated on either factual or legal grounds. *Kelly*, 301 S.W.3d at 659. One factual ground that may be challenged in the jurisdictional inquiry is an agency relationship by which the contacts of an agent are sought to be

attributed to the principal. *Novamerican Steel, Inc. v. Delta Brands, Inc.*, 231 S.W.3d 499, 511 (Tex. App.—Dallas 2007, no pet.); *see Davis v. Asano Bussan Co.*, 212 F.2d 558, 563–64 (5th Cir. 1954).

A principal must be shown to control another person's conduct of business or to have delegated to that other person management of some matter for the other to be the principal's agent. *See Schott Glas v. Adame*, 178 S.W.3d 307, 315 (Tex. App.—Houston [14th Dist.] 2005, pet. denied), *disapproved of on other grounds by PHC–Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 169 (Tex. 2007); *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 549 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Courts do not presume an agency relationship exists, rather the party asserting an agency relationship exists has the burden of proof. *See Schott Glas*, 178 S.W.3d at 315; *Bottle Rock*, 108 S.W.3d at 549.

Discharging the burden of proof requires proving an essential element of the principal–agent relationship that the alleged principal had the right to control the actions of the alleged agent. *See Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993). To prove the right to control more must be proven than merely the right to assign tasks; there must be proof of the right to dictate the means and details of the process by which an agent will accomplish the task. *See Ross v. Tex. One P'ship*, 796 S.W.2d 206, 210 (Tex. App.—Dallas 1990), *writ denied*, 806 S.W.2d 222 (Tex. 1991) (per curiam). If there is proof only of the right to control the end sought to be accomplished, but not the means and details of how it should be accomplished, then

what has been proven is that the alleged agent is merely employed as an independent contractor and not as an agent. *Schott Glas*, 178 S.W.3d at 315; *First Nat'l Bank v. Bullock*, 584 S.W.2d 548, 551–52 (Tex. App.—Austin 1979, writ ref'd n.r.e.). These concepts are distilled in the pattern jury charge as follows:

> An "employee" is a person in the service of another with the understanding, express or implied, that such other person has the right to direct the details of the work and not merely the result to be accomplished.

*Agency and Special Relationships,* ¶ 10.1, TEX. PATTERN JURY CHARGE (2018).

> A person is not acting as an employee if he is acting as an "independent contractor." An independent contractor is a person who, in pursuit of an independent business, undertakes to do specific work for another person, using his own means and methods without submitting himself to the control of such other person with respect to the details of the work, and who represents the will of such other person only as to the result of his work and not as to the means by which it is accomplished.

*Id*. at ¶ 10.8.

In the context of personal jurisdiction, this distinction between agent and independent contractor is outcome determinative because only an agent's contacts with the forum are attributable to the principal, not the contacts of an independent contractor. *See Schott Glas*, 178 S.W.3d at 315; *Bottle Rock*, 108 S.W.3d at 549 n.4 (citing *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55 (1st Cir. 2002)).

I focus on specific jurisdiction because Stern limited his pleading and arguments to specific jurisdiction. We analyze specific jurisdiction on a claim-by-claim basis. *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150

–4–

(Tex. 2013).  But when the parties provide no pleading, argument, or analysis regarding the claims arising from different forum contacts, we analyze all the claims together on the same jurisdictional facts.  *Id.* at 150–51 ("[A] court need not assess contacts on a claim-by-claim basis if all claims arise from the same forum contacts.").

Specific jurisdiction exists only when the nonresident defendant's alleged liability arises out of or is related to his activity conducted within the forum.  *See Moki Mac*, 221 S.W.3d at 576.  The contacts with the forum that we are to analyze for jurisdictional purposes are those where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State.  *See Moncrief Oil*, 414 S.W.3d at 151 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 475 (1985)).  A substantial connection can result from even a single act.  *See id.* (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).  But there must be a substantial connection between those contacts and the operative facts of the litigation.  *See id.* at 156 (quoting *Moki Mac*, 221 S.W.3d at 585). The operative facts are those on which the trial will focus to prove the liability of the defendant who is challenging jurisdiction.  *See id.* at 156, 157 (citing *Moki Mac*, 221 S.W.3d at 585).

Important to this case is the Texas Supreme Court's application of these principles in *Moncrief Oil*.  There the court declined to exercise specific jurisdiction over a foreign company on the tortious interference claims against it.  *See id.* at 156–

57. The supreme court reasoned that when the alleged communications on which liability was based occurred at a meeting in California, even though individuals from Texas participated in the meeting and the alleged result of the meeting was the decision to breach a contract performable in Texas, those operative facts were not substantially connected to Texas for the jurisdictional analysis. *Id.*

So, I begin by pointing out Stern's three trips to Florida—similar to the California trip in *Moncrief Oil*—his conversations in Florida with Peter, Peter's allegedly fraudulent statements in Florida to Stern, and the club in Panama are not jurisdictional facts connecting Peter to Texas. *See id.*

Stern appears to recognize this because he claims, "Peter carried out his scheme through two agents – Edwin ("Eddy") Maldonado and David Sebag." Stern relies on the following evidence to prove Maldonado and Sebag were agents, as opposed to independent contractors, of Peter:

- Maldonado lived in Texas;

- Sebag lived on Peter's yacht in Florida;

- "Both agents were financially supported by Peter";

- "Seeking prospective investors in Texas, Peter told Maldonado that Maldonado would be rewarded 5% of any investments he obtained from Texas investors";

- "Sebag helped carry out the scheme by writing Stern emails";

- "Eventually, Sebag acted as Peter's bagman by coming to Texas and personally collecting cash for Peter's scheme."

- Stern alleged Sebag and Peter were in the "Panama Project" or one or more related entities and that Sebag's actions on behalf of the entity were, therefore, on behalf of Peter.[2]

Even if Stern proved all of these matters with competent evidence, which it is doubtful he did on this record, none of these amount to evidence that Peter had the right to control the means and details of how Maldonado or Sebag should work towards the goal sought to be accomplished. *See Ross*, 796 S.W.2d at 210. What Stern's proof does show is Peter offered 5% compensation for acquiring investors, and then Maldonado or Sebag worked to acquire investors. Stern's proof further shows that Peter was involved when Stern visited him in Florida three times and there made statements on which Stern predicates his claims. Instead, Stern proved at most Maldonado and Sebag were merely employed as independent contractors and not as agents. *See Schott Glas*, 178 S.W.3d at 315; *Bullock*, 584 S.W.2d at 551–52.

---

[2] There is a significant dispute between Peter and Stern about different entities and their relationship to each of them, Sebag, and the project to develop the club in Panama. We need not resolve these tangential matters because even if Sebag acted on behalf of an entity in which Peter owned an interest, Stern still must show Peter had the right to control Sebag's manner and means of his activities for Sebag's jurisdictional contacts to be attributable to Peter. *See, e.g., Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 412–13 (Tex. App.—Dallas 2008, no pet.) (agency not shown, just independent contractor relationship, so jurisdictional contacts of independent contractor not attributable to non-resident defendant).

Stern was obligated to do more than simply label Maldonado and Sebag as Peter's agents.  For Stern to be able to attribute the jurisdictional acts of Maldonado or Sebag to Peter, Stern had to prove Peter had the right to control the actions of Maldonado or Sebag.  *See Tidwell*, 867 S.W.2d at 21.  This required Stern to prove more than Peter's right merely to assign tasks; Stern had to prove Peter had the right to dictate the means and details of the process by which Maldonado or Sebag would accomplish the task.  *See Ross*, 796 S.W.2d at 210.  Instead, Stern proved at most Maldonado or Sebag were independent contractors and not agents.  *Schott Glas*, 178 S.W.3d at 315; *Bullock*, 584 S.W.2d at 551–52.  Stern's lack of any evidence of the critical aspect of agency is outcome determinative because only an agent's contacts with the forum are attributable to the principal, not the contacts of an independent contractor.  *See Schott Glas*, 178 S.W.3d at 315; *Bottle Rock*, 108 S.W.3d at 549 n. 4.  Courts do not presume an agency relationship exists; rather the party asserting an agency relationship exists has the burden of proof.  *See Schott Glas*, 178 S.W.3d at 315; *Bottle Rock*, 108 S.W.3d at 549.  This is longstanding precedent:

- "Texas law does not presume agency, and the party who alleges it has the burden of proving it. . . .  Nothing in this record shows that IRA Resources even had knowledge, much less control, over Martinez or his employer, whose independent actions cannot subject IRA Resources to specific jurisdiction in Texas.  Griego's jurisdictional argument fails at the most threshold level." *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 596–97 (Tex. 2007) (citing *Buchoz v. Klein*, 184 S.W.2d 271, 271 (1944));

- "Seeking to establish the purposeful availment prong of the specific jurisdiction inquiry, O'Quinn first contends that personal jurisdiction

over World is proper in Texas because a principal-agent relationship existed between World and Merit when Merit established recruiting offices and performed recruiting services in Texas. According to well-established law, a defendant may be found subject to personal jurisdiction as a result of the actions of an agent. *Davis v. Asano Bussan Co.*, 212 F.2d 558, 563 (5th Cir. 1954); *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990). Under Texas law, in order for a principal-agent relationship to be established, the principal must have the right to control both the means and the details of the process by which the agent accomplishes the actions at issue. *First Nat'l Bank of Fort Worth v. Bullock*, 584 S.W.2d 548, 551-52 (Tex. App.–Dallas 1979, writ ref'd n.r.e.). Although the World-Merit contract specifies that Merit is to provide the labor and local facilities necessary to process applications, World simply does not have contractual authority to determine where such facilities are to be located. When Merit established its office in Texas City, Merit purposefully availed itself of the laws and protections of Texas. However, World did not have sufficient control over the means or details of Merit's actions to establish an agency relationship." *O'Quinn v. World Indus. Constructors*, No. 95-40258, 1995 WL 581830, at *2 (5th Cir. Sept. 19, 1995);

- "Shareholder status is not ipso facto proof of agency. Instead, the 'essential feature' of agency is the 'right of control.' . . . Here, the evidence presented by Stocksy shows that it did not have a right to control Curette when she photographed Morris, edited the photographs, and uploaded them onto her Stocksy profile." *Stocksy United v. Morris*, 592 S.W.3d 538, 548 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (quoting *Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 85 (Tex. App.—Houston [1st Dist.] 2008, no pet.));

- "The requirement that Blue Endo keep Trokamed informed of its activities and the market conditions of the territory, and that Blue Endo advise Trokamed if approval, permits, or consents are lacking, is not evidence that Trokamed had an actual right of control over Blue Endo sufficient to attribute Blue Endo's contacts with Texas to Trokamed. *See Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 733 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (concluding that in assessing whether one party's contacts can be imputed upon another, critical test focuses on right and/or exercise of control). To the

contrary, the distribution agreement reflects the parties' express agreement that Blue Endo would preserve its independent status . . . ." *Trokamed GmbH v. Vieira*, No. 01-17-00485-CV, 2018 WL 2436610, at *8 (Tex. App.—Houston [1st Dist.] May 31, 2018, no pet.) (mem. op.);

- "Bluesky alleges that Edge was an agent of 21st Century and Georgas. Bluesky provides no support for his position, however . . . . Furthermore, the Edge Solutions Marketing Agreement ('Agreement') between Edge and 21st Century . . . expressly states that Edge is an 'independent contractor.' . . . Indeed, the Agreement displays no direction as to when, where, or how Edge was to perform its work for 21st Century and Georgas, which implies an independent contractor relationship." *Blueskygreenland Envtl. Sols., LLC v. Rentar Envtl. Sols., Inc.*, No. 4:11-CV-01745, 2011 WL 5553706, at *5 (S.D. Tex. Nov. 14, 2011).

Requiring Stern to prove Peter's right to control the manner and details of Maldonado and Sebag's work in order to prove an agency relationship is neither trivial nor a mere hyper-technicality. It in fact relates to the foundational structure of our United States and determines the negligence liability of employers.

In the absence of any evidence of agency, the majority opinion authorizes the extension of the jurisdictional power of Texas to hale into a Texas court a Floridian who never came to Texas and dealt with the Texan when the Texan traveled to Florida three times. This violates the Floridian's due process rights when Texas exercises sovereignty over conduct that occurred in Florida. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.13 (1985) ("Although this protection operates to restrict state power, it must be seen as ultimately a function of the individual liberty interest preserved by the Due Process Clause rather than as a function of federalism

–10–

concerns.") (internal quotation deleted). And even if Peter structured his effort to raise investment funds in the Panama club by using independent contractors to avoid jurisdiction outside of Florida, he is allowed to do so thereby conforming his conduct to the rule of law. A nonresident is entitled to rely on the constitutional limit of Texas's personal jurisdiction imposed by the requirement that the nonresident must purposefully avail himself of the benefits of Texas law and structure his transactions so as to not profit from Texas's laws nor subject himself to Texas's jurisdiction. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) ("[A] nonresident may purposefully avoid a particular jurisdiction by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction." (citing *Burger King*, 471 U.S. at 463)). There is nothing sinister about doing so just as when individuals and businesses structure their conduct to minimize or avoid tax liability. *See Ratzlaf v. United States*, 510 U.S. 135, 145–46 (1994) (absent anti-structuring law such as money-laundering statute, "Courts have noted many occasions on which persons, without violating any law, may structure transactions in order to avoid the impact of some regulation or tax." (internal quotation deleted), providing example regarding Stamp Act of 1862 and citing *United States v. Isham*, 84 U.S. (17 Wall.) 496, 506 (1873)). This is, in fact, the purpose of the rule of law, to enable everyone to conform their conduct to the law with the expectation the law will be upheld in court. So, when a court decides the reach of one state's jurisdictional power crosses state boundaries to govern conduct

–11–

that occurred in another state it should only do so carefully, in compliance with the constitutional constraints, and when supported by the facts in the record, which are lacking here.

Additionally, failing to require proof of the right to control the manner and details of how work is accomplished in order to prove agency will result in holding principals liable for the negligence of the independent contractors they hire. There is a reason the pattern jury charge places the jury submissions of agency and independent contractor—both quoted above—among the general negligence sections. *See Agency and Special Relationships,* ¶¶ 10.1, 10.8, TEX. PATTERN JURY CHARGE (2018). That is because the issue arises frequently in the context of negligence cases. And just as in the jurisdictional context where the absence of evidence of the right to control the manner and details of how work is done can be dispositive, the difference between agency and independent contractor status is liability determinative in negligence cases. That is, if the tortfeasor is the agent of a principal, the principal is liable for the negligence of the agent; but if the tortfeasor is an independent contractor, the putative principal is not liable for his negligence. As this Court summarized,

> Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment, although the principal or employer has not personally committed a wrong. *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998); *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex. 1995). *The justification for imposing such liability is that the principal or employer has the right*

*to control the means and methods of the agent or employee's work. Baptist Mem'l Hosp. Sys.*, 969 S.W.2d at 947; *see Newspapers, Inc. v. Love*, 380 S.W.2d 582, 585–86 (Tex. 1964).  In contrast, an individual or entity that hires an independent contractor is generally not vicariously liable for the tortious acts or negligence of that person because the independent contractor has sole control over the means and methods of the work to be accomplished.  *See Baptist Mem'l Hosp. Sys.*, 969 S.W.2d at 947; *Enserch Corp. v. Parker*, 794 S.W.2d 2, 6 (Tex. 1990); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985).

*Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 683 (Tex. App.—Dallas 2000, no pet.) (emphasis added).  So, if we water down the requirement that there be proof that Peter had the right to control the means and details of how Maldonado or Sebag should accomplish their goal of acquiring investors to nothing more than Peter had the right to control the goal or end sought to be accomplished, that results in making principals liable for the negligent acts of the *independent contractors* they hire.  This is not some hyper-technical requirement; it's the whole basis for a principal's respondeat superior liability for the negligent acts of his agent:  because the principal has the right to control how an agent performs the manner and details of the work and should exercise that right to control in a reasonably prudent manner towards others.  *See id.* (citing *Baptist Mem'l Hosp. Sys.*, 969 S.W.2d at 947 and *Love*, 380 S.W.2d at 585–86).  Reducing proof of agency to nothing more than independent contractor status, as the majority does, results in a massive expansion of liability for every individual (here, Peter) and every business alleged to be the principal when its independent contractor is alleged to be its agent.

On this record, I conclude Stern failed to bring forward any evidence Peter had the right to control the manner and details of how Maldonado and Sebag were to go about their work to acquire investors. We should not assume an agency relationship by which Maldonado and Sebag's jurisdictional conduct (and their negligent conduct, too, if any) are imputed to Peter. On this record, we should not denigrate Peter's due process rights by aggrandizing the jurisdictional power of Texas, we should not expand the liability of every alleged principal in negligence cases beyond the common law respondeat superior liability for agents, and we should reverse the trial court's order and render judgment granting Peter's special appearance. Because the majority opinion concludes otherwise, I respectfully dissent.

/David Evans/
DAVID EVANS
JUSTICE

200021DF.P05